UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL KROTZER,** | : | Civil No. 4:12-CV-945 |
| | : | |
| **Plaintiff** | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **OFFICER TROY FREEMAN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION** [1]

## I.  Introduction

In the instant case we are asked to address a simple question: Can a state prisoner who pleaded no contest to a probation violation later elect to contest that probation violation in the guise of a federal civil rights lawsuit? For the reasons set forth below we submit that the answer to this question is "no", and that the plaintiff's complaint must, therefore, be dismissed.

## II.  Statement of Facts and of the Case

On May 21, 2012, the plaintiff, Michael Krotzer, a state prisoner, filed a *pro se* civil complaint with this court. (Doc. 1.) The plaintiff's complaint directly arises

---

[1] This matter was previously assigned to United States Magistrate Judge J. Andrew Smyser, but upon Judge Smyser's retirement has been reassigned to the undersigned for further proceedings.

1

out of probation revocation proceedings which resulted when Krotzer allegedly provided urine specimens to Tioga County probation officers which tested positive of drug use. (Id.) Specifically, the pleadings reveal that in 2001 Krotzer was being supervised by the Tioga County Probation Office. On three consecutive occasions, February 24, 2011; April 20, 2011; and June 28, 2011, probation officers conducted drug tests of Krotzer, tests which proved positive for use of illegal controlled substances. (Doc. 10, ¶7.) As a result of the third consecutive positive drug test, the Defendants petitioned the Court to revoke Krotzer's probation. (Id., ¶8.)

On June 28, 2011, President Judge Robert E. Dalton of Tioga County Court of Common Pleas, issued an Order directing the Sheriff to commit and retain Krotzer for violation of probation, pending a hearing on these alleged violations. (Id., ¶9.) This matter then came up for a hearing before the Court of Common Pleas of Tioga County on July 18, 2011, at which time Krotzer entered a plea of "no contest" to the Petition for Revocation of Probation. As a result, the Court revoked the sentence of probation previously granted, and ordered Krotzer incarcerated. (Id., ¶10.)

Having elected to plead no contest to these violations in 2011, in 2012 Krotzer has now filed the instant *pro se* civil rights lawsuit, alleging that the defendant probation officers and the Tioga County Probation Office are "guilty of false

imprisonment [and] forging a urine sample." (Doc. 1.) On the basis of these cursory allegations, Krotzer seeks damages from these officials totaling $3,700,000. (Id.)

The individual probation officers named as defendants in this action have now moved to dismiss Krotzer's complaint. (Doc. 11.) This motion is fully briefed by the parties, (Docs. 14 and 20), and is ripe for resolution. In addition, having been newly assigned to this matter we have conducted an independent screening analysis of this complaint, as we are legally required to do. On the bases of these analyses, for the reasons set forth below, it is recommended that Krotzer's complaint be dismissed.

## II.   Discussion

### A.   Legal Standards Governing Sufficiency of Civil Complaints

The individual probation officers named as defendants in this case have moved to dismiss this action, alleging that the plaintiff has failed to state a claim upon which relief may be granted. In addition, this Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs, like Krotzer, who have been given leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when

reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B. In its Current Form This Complaint Fails to State A Claim Upon Which Relief Can Be Granted

In this case, dismissal of this complaint is warranted because, in its present form, Krotzer's complaint fails to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. The flaws in the current *pro se* complaint lodged by Krotzer are discussed separately below.

### 1. Krotzer May Not Bring a Civil Rights Action for False Imprisonment Based Upon What Is Presently a Valid Criminal Conviction Probation Revocation and Sentence

At the outset, Krotzer's complaint fails because it rests on a fatally flawed legal premise. At bottom, Krotzer seeks to bring a civil rights action premised on claims of false imprisonment based upon a valid state criminal conviction and probation revocation, which he did not contest, and which has not otherwise been set aside or overturned.

This he cannot do. Quite the contrary, it is well-settled that an essential element of a civil rights false imprisonment claim is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a malicious prosecution, or false arrest claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483 (quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county

prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

The principles enunciated in Heck apply with full force to civil rights litigants like Krotzer who belatedly attempts to use a federal civil rights lawsuit to challenge a probation revocation proceeding. Indeed, it is well settled that a "claim that revocation of [the plaintiff's] probation was unconstitutional falls within the Heck category of cases. See Hunterson v. Disbato, 244 Fed. Appx. 455, 458 (3d Cir. 2007) ("An action alleging that a parole revocation was constitutionally infirm falls into th[e Heck] category of cases."); Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006) (applying Heck to bar § 1983 claim based on revocation of parole); Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996) (holding Heck "applies to proceedings that call into question the fact or duration of parole or probation"); Hawn v. Pavlick, C.A. No. 07-110, 2007 WL 1063848, at *3 (W.D. Pa. Apr. 5, 2007) (collecting cases extending Heck to plaintiffs attacking parole and probation decisions." Heilman v. T.W.

Ponessa & Associates, 4:07-CV-1308, 2008 WL 275731 (M.D. Pa. Jan. 30, 2008) aff'd sub nom. Heilman v. T.W. Ponessa And Assoc., 08-1667, 2009 WL 82707 (3d Cir. Jan. 14, 2009). Such claims, which would call into question the outcome of these criminal proceedings, are simply barred by Heck.

In this case it is evident from Krotzer's complaint that his prior state probation revocation proceedings did not terminate favorably for him, since he pleaded no contest to these violations and was incarcerated. Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor," Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000), this immutable fact presently defeats any federal civil rights claims based upon false arrest or malicious prosecution in this state case, and compels dismissal of these claims. In short, this complaint is based upon the fundamentally flawed legal premise that Krotzer can sue state officials for false arrest and imprisonment even though he stands adjudged guilty of violating his probation. Since this premise is simply incorrect, Krotzer's complaint fails as a matter of law.

While this defense has been raised by motion solely by the individual probation officers named as defendants in this action, as part of our legally-mandated case screening obligations, we note that this defense applies with equal force to the institutional defendant, the Tioga County Probation Office. Therefore, pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii) we recommend dismissal of all defendants from this lawsuit on the grounds that Krotzer's claims are barred by Heck and its progeny.

### 2. The Eleventh Amendment to the United States Constitution Bars this Lawsuit Against the Tioga County Probation Office

Further, as part of this legally mandated screening process, we note a second fundamental flaw in Krotzer's complaint as it relates to the Tioga County Probation Office, one of the named defendants in this action. In this case, dismissal of this complaint against the county probation office is warranted because Krotzer's *pro se* complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal

courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania, and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S.A. § 8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. § 8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to claims involving the various county common pleas court agencies, like county probation offices, which are defined by statute as institutions of state government. Haybarger v. Lawrence Cnty. Adult Prob. And Parole, 551 F.3d 193, 198 (3d Cir. 2008) ("Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity"); see, e.g., Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3d Cir.

12

2000) (noting that "[a]ll courts and agencies of the unified judicial system" are part of the Commonwealth government); Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009).

Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). Therefore, Krotzer may not maintain a civil rights action under § 1983 against this institutional defendant. In sum, Krotzer's federal civil rights claims for damages against the Tioga County Probation Office are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore this claim should be dismissed.

### 3. Krotzer's Claim for a Specified Sum of Unliquidated Damages Should be Stricken

Further, we note that the Court should also strike the claim for specific sums of unliquidated damages, $3,700,000, from this *pro se* complaint. In this regard, Rule 12 (f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review

pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. <u>Singh v. Superintending School Committee of the City of Portland</u>, 593 F. Supp. 1315 (D. Me. 1984). In this case, the plaintiff's various claims for specified amounts of unliquidated damages violate Local Rule 8.1 which provides, in part, that:

> The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P.8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief *but shall not claim any specific sum where unliquidated damages are involved.* The short plain statement of jurisdiction, required by Fed.R.Civ.P. 8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other.

Local Rule 8.1 (emphasis added).

Since this prayer for relief violates Local Rule 8.1 by specifying particular amounts of unliquidated damages, these specific dollar claims should be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

We recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.

14

Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, Krotzer has not alleged facts that would state a claim upon which relief may be granted, and it appears that he may be unable to do so. Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Krotzer attempting to amend this federal complaint to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint should be dismissed, but that the dismissal of this action be without prejudice to any effort by Krotzer to timely allege facts in an amended complaint which might state a claim upon which relief may be granted, provided Krotzer acts within 20 days of any dismissal order.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of September, 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge